UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFF ROBERT,

    Plaintiff,

v.

CITY OF DETROIT,

    Defendant.
_____/

Case No. 16-cv-12778

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#26] AND ALLOWING PLAINTIFF TO FILE A MOTION FOR LEAVE TO AMEND COMPLAINT

### I. INTRODUCTION

Presently before the Court is Defendant City of Detroit's Motion for Summary Judgment. Defendant suspended Plaintiff Jeff Robert, a former Detroit City Police Officer, for about three months with pay after Plaintiff was involved in a motor vehicle accident and left the scene of the accident. Plaintiff filed suit against the City of Detroit under 42 U.S.C. § 1983 alleging Fourth and Fourteenth Amendment violations. Plaintiff also filed concurrent state law claims under the Michigan constitution and a state law claim alleging intentional infliction of emotional distress. For the reasons discussed herein, the Court will grant Defendant's Motion and allow Plaintiff to file a motion to amend his complaint.

## II. FACTUAL BACKGROUND

This case stems from a motor vehicle accident that occurred in the early morning hours of April 18, 2015. Dkt. No. 28-1, pg. 8 (Pg. ID 300). Plaintiff Jeff Robert is a former police officer with the City of Detroit; he is currently a detective with the City of Detroit. *Id.* at pg. 5 (Pg. ID 297). On August 17, 2017, Plaintiff attended a party for police officers graduating from the police academy. *Id.* at pgs. 8–9 (Pg. ID 300–01). Plaintiff consumed two beers and one shot of alcohol at the party. *Id.* at pg. 9 (Pg. ID 301). After the party, Plaintiff gave a Student Police Officer, Officer Kimberly Buckner, a ride home on his motorcycle. *Id.* At approximately 2:05 am[1] while giving Buckner a ride home, Plaintiff encountered a sharp turn and was not able to complete the turn. *Id.* at pgs. 9–10 (Pg. ID 301–02). Plaintiff's motorcycle struck the curb, and the motorcycle went down and slid a short distance. *Id.* at pg. 10 (Pg. ID 302). Plaintiff and Officer Buckner got up and brushed dirt off of themselves. *Id.* Plaintiff asked Officer Buckner if she was okay, and she responded yes. *Id.* Officer Buckner then called another officer, Officer

---

[1] Dkt. No. 26-3, pg. 3 (Pg. ID 244). This time stamp is according to the Internal Affairs report of Sergeant Steven L. Peil, who spoke with Officer Buckner on the night of the accident.

Reason[2], to pick her up from the accident scene. *Id.* Officer Reason showed up within four minutes and took Officer Buckner home. *Id.*

Sometime before Plaintiff started his motorcycle back up, he called Sergeant Jeremy James, his supervisor. *Id.* at pg. 11 (Pg. ID 303). Plaintiff reached Sergeant James' voicemail. *Id.* Plaintiff left a message, informing Sergeant James that he had Officer Buckner on his motorcycle and that he had "dropped the bike." *Id.* After Plaintiff left the voice message, he picked up his motorcycle and started to drive home. *Id.* While driving, Plaintiff noticed he was having an issue shifting. *Id.* He drove the bike to the parking lot at 7310 Woodward, his old police station base. *Id.* Plaintiff's wife picked him up from the parking lot and he left the motorcycle in the parking lot. Dkt. No. 1, pg. 3 (Pg. ID 3).

At approximately 2:15 am on April 18, 2015, Lieutenant Kelly Fitzgerald received a notification from Sergeant Michelle Zberkot that Sergeant Zberkot received a phone call from Officer Buckner. Dkt. No. 28-2, pg. 5 (Pg. ID 313). Officer Buckner's phone call notified Sergeant Zberkot that she and Plaintiff had been involved in an accident. Officer Buckner went to Beaumont Hospital in Royal Oak, Michigan, on the night of the accident. Dkt. No. 26-3, pg. 2 (Pg. ID 243). At

---

[2] Student Police Officer Roland Reason. Plaintiff's deposition spells this last name as "Reizen." However, other evidence in the record shows that his name is spelled "Reason." *See* Dkt. No. 26-3, pg. 3 (Pg. ID 244).

the hospital, she was treated for a small laceration on the left side of her forehead and severe abrasions on her left leg. *Id.* That same night, Captain Darin Szilagy canvassed the area near where the accident had allegedly occurred and did not observe any signs of an accident; he also did not see Plaintiff at the scene. *Id.* At 3:00 am on April 18, 2015, Lieutenant Fitzgerald directed Sergeant Bernadette Dunbeck and Sergeant Steven Peil to conduct a preliminary investigation into the accident. *Id.* At 5:18 am on April 18, 2015, Sergeants Dunbeck and Peil interviewed Officer Buckner. *Id.* Officer Buckner described her version of the accident to the Sergeants. *See id.*

At approximately 9:50 am on April 18, 2015, Sergeant Dunbeck faxed a search warrant request to apprehend and collect a blood sample from Plaintiff to the Wayne County Assistant Prosecuting Attorney. *Id.* at pg. 4 (Pg. ID 245). At approximately 10:15 am, Sergeant Lora Stanton informed Sergeant Dunbeck that there were no requests or reports for calls for service regarding the accident around the area where the accident allegedly took place. *Id.* At 10:20 am, Sergeant Peil notified Sergeant Tony Coppola that members of the Detroit Police Department were going to arrest Plaintiff for leaving the scene of an injury accident. *Id.*

According to Plaintiff, three officers showed up to his house around noon or 1:00 pm on April 18, 2015 and placed him under arrest. Dkt. No. 28-1, pg. 12 (Pg. ID 304). When Plaintiff asked what he was being arrested for, a lieutenant told him

it was for leaving the scene of an injury accident. *Id.* Plaintiff was examined by the Michigan Department of Corrections Register Nurse for his injuries, which included abrasions to the left side of his face, nose, and chin, and abrasions on both of his hands, arms, and legs. Dkt. No. 26-3, pg. 5 (Pg. ID 246). At approximately 12:34 pm, Sergeants Peil and Dunbeck interviewed Plaintiff under the provisions of Miranda. *Id.* Plaintiff refused to make a statement. *Id.* At approximately 1:27pm, Defendant released Plaintiff. *Id.* At 1:55pm, Sergeant Peil and three other officers travelled to 7310 Woodward and observed Plaintiff's motorcycle parked there, with damage to the left side and the windshield. *Id.*

Sergeant Peil recommended that Plaintiff be suspended with pay pending the departmental adjudication of the incident. *Id.* Sergeant Peil also recommended that Plaintiff be charged with Conduct Unbecoming An Officer. *Id.* at pg. 6 (Pg. ID 247). On April 18, 2015, Defendant suspended Plaintiff with pay. *See* Dkt. No. 26-3, pg. 8 (Pg. ID 249).

On April 20, 2018, Captain Brian Mounsey and Lieutenant Fitzgerald spoke with Assistant Prosecuting Attorney Robert Donaldson of the Wayne County Prosecutor's Office. *Id.* at pg. 11 (Pg. ID 252). During the conversation, it was determined that charges against Plaintiff would not be presented and that Defendant would conduct a misconduct investigation. *Id.* On May 28, 2015, Commander DeShaune Sims found it unlikely that Defendant would prevail in a

termination of Plaintiff. *Id.* Commander Sims recommended that Defendant restore Plaintiff to full duty pending the completion of the investigation. *Id.* On June 5, 2015, Chief of Police James Craig recommended that Plaintiff be restored to full duty pending the departmental adjudication of the motor vehicle incident. *Id.* at pg. 15 (Pg. ID 256). Plaintiff returned to work in August of 2015. Dkt. No. 28-1, pg. 12 (Pg. ID 304). On November 12, 2015, Defendant issued a formal memorandum to Plaintiff informing him that the investigation into the motor vehicle incident had been closed. Dkt. No. 26-3, pg. 16 (Pg. ID 257). On December 8, 2015, Defendant charged Plaintiff with Neglect of Duty in violation of the Detroit Police Department Manuel Series 100. Dkt. No. 28-2, pg. 2 (Pg. ID 310). Plaintiff alleges that during his suspension, he was unable to work in secondary employment[3] and earn overtime. Dkt. No. 28-1, pg. 12 (Pg. ID 304).

On July 27, 2016, Plaintiff filed his complaint against the City of Detroit. Dkt. No. 1. Plaintiff alleged false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983. *Id.* at pgs. 4–8 (Pg. ID 4–8).[4] Plaintiff also alleged a state law claim of intentional infliction of emotional distress. *Id.* at pg. 5

---

[3] Secondary employment is when police officers work as security for various vendors located in the City. Dkt. No. 28-1, pg. 12 (Pg. ID 304).
[4] It is unclear from Plaintiff's complaint whether Plaintiff asserts both federal and state claims of false arrest, false imprisonment, and malicious prosecution. Therefore, this Court will presume that Plaintiff brings both federal and state claims for each of these counts.

(Pg. ID 5). On July 27, 2017, Defendant filed its first Motion for Summary Judgment—three months after the dispositive motion cutoff date. Dkt. No. 15. The parties thereafter entered into settlement agreements and agreed upon a settlement amount that the Detroit City Council rejected. After settlement negotiations proved unsuccessful, this Court struck Defendant's first Motion without prejudice on March 30, 2018. Dkt. No. 25. On April 26, 2018, Defendant re-filed its Motion for Summary Judgment. Dkt. No. 26. Plaintiff filed his response opposing the Motion on May 17, 2018. Dkt. No. 28. Plaintiff's response also requested leave to amend his complaint should this Court rule in favor of Defendant. *Id.* at pg. 14 (Pg. ID 291). Defendant did not file a reply.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

#### 1. Federal Claims

Count I of Plaintiff's complaint alleges deprivation of constitutional rights in violation of 42 U.S.C. § 1983. Dkt. No. 1, pg. 4 (Pg. ID 4). Counts III and IV of Plaintiff's complaint allege false arrest and false imprisonment. *Id.* at pg. 6 (Pg. ID 6). Count V of Plaintiff's complaint alleges malicious prosecution. *Id.* This Court will consider Plaintiff's federal claims first. To prevail in a § 1983 claim against a municipality, one must demonstrate: (1) the deprivation of a constitutional right; and (2) that the defendant (municipality) is liable for the violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

##### a. False Arrest/Imprisonment

Counts III and IV of Plaintiff's complaint allege false arrest and false imprisonment. Dkt. No. 1, pg. 4 (Pg. ID 4). First, this Court must determine if there was a constitutional deprivation. "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. Of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)). The Sixth Circuit

holds that probable cause exists when a police officer "discovers reasonably reliable information that the suspect has committed a crime." *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). This Court must determine if a reasonable juror could conclude that Defendant lacked probable cause to arrest Plaintiff. In this case, Defendant arrested Plaintiff for leaving the scene of an injury accident. Dkt. No. 26-3, pg. 4 (Pg. ID 245). Michigan Compiled Law § 257.619 states:

> The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident with an individual or with another vehicle that is operated or attended by another individual shall do all of the following:
> (a) Give his or her name and address, and the registration number of the vehicle he or she is operating, including the name and address of the owner, to a police officer, the individual struck, or the driver or occupants of the vehicle with which he or she has collided.
> (b) Exhibit his or her operator's or chauffeur's license to a police officer, individual struck, or the driver or occupants of the vehicle with which he or she has collided.
> (c) Render to any individual injured in the accident reasonable assistance in securing medical aid or arrange for or provide transportation to any injured individual.

The record in this case shows that the Defendant gathered reasonably reliable information before Plaintiff's arrest proving that Plaintiff failed to follow elements (a) and (b) of M.C.L. § 257.619. Within an hour[5] after the accident

---

[5] The record is unclear about exactly how long after the accident occurred that Captain Szilagy canvassed the area. However, according to other time stamps in

occurred, Captain Darin Szilagy canvassed the area near where the accident had allegedly occurred and did not observe any signs of an accident; he also did not see Plaintiff at the scene. Dkt. No. 26-3, pg. 2 (Pg. ID 243). Before Plaintiff's arrest, Sergeant Lora Stanton also informed Sergeant Dunbeck that there were no requests or reports for calls for service regarding the accident around the area where the accident allegedly took place. *Id.* at pg. 4 (Pg. ID 245).

However, there is also evidence in the record that could lead a reasonable juror to conclude Defendant did not have probable cause to arrest Plaintiff. Captain Darin Szilagy's canvass of the area near where the accident occurred happened about one hour after the accident. Dkt. No. 26-3, pg. 2 (Pg. ID 243). Therefore, even if Plaintiff had complied with the law, it is reasonable that the scene of the accident could have been deserted when Szilagy canvassed the area because the report of the accident was complete.

Defendant was informed before Plaintiff's arrest that there were not requests or reports for calls for service regarding the accident around the area where the accident allegedly took place. *Id.* at pg. 4 (Pg. ID 245). Although this is strong evidence of the existence of probable cause, a reasonable juror could still find that

---

the record, Captain Szilagy's canvass likely happened around 3:00 am on the night of the accident—about one hour after the accident occurred. *See* Dkt. No. 26-3, pg. 2 (Pg. ID 243).

no probable cause existed. For example, a reasonable juror could conclude that the person checking the records overlooked a call from Plaintiff about the accident or did not check the records for the correct location of the accident, or otherwise overlooked something in the records. Further, the statement given to Defendant by Officer Buckner stated that she left the scene of the accident before Plaintiff. *Id.* at pg. 3 (Pg. Id 244). Therefore, Defendant did not know from Officer Buckner's statement whether Plaintiff complied with M.C.L. § 257.619 before leaving the scene of the accident. In conclusion, this Court finds that there is enough evidence to create a genuine issue of material fact about whether Defendant had probable cause to arrest Plaintiff.

The second part of a § 1983 claim requires Plaintiff to show that Defendant is liable for the constitutional violation. To do this, Plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694). Plaintiff must show one of the following to prove this claim:

>(1) the existence of an illegal official policy or legislative enactment;
>(2) *that an official with final decision making authority ratified illegal actions*;
>(3) the existence of a policy of inadequate training or supervision; or

> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)). Here, Plaintiff alleges municipal liability under element two of *Monell*. Plaintiff's response states that Defendant is liable because the decision to arrest, detain, suspend, and remove Plaintiff from his job "came high up in the chain of command." Dkt. No. 28, pg. 11 (Pg. ID 288). Plaintiff then alleges that the Chief of Police, James Craig, held ultimate policymaking authority; therefore, Plaintiff properly brought suit against the City of Detroit. *Id.* at pgs. 11–12 (Pg. ID 288–89). Thus, to establish *Monell* liability, Plaintiff must demonstrate that Police Chief Craig—an official with final decision-making authority—ratified illegal actions. Specifically, [P]laintiff must demonstrate that a "deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Further, "that course of action must be shown to be the moving force behind or cause of the plaintiff's harm." *Id.*

In this case, the record does not establish that Police Chief Craig ratified or otherwise ordered police officers to arrest Plaintiff. Reports from Internal Affairs do not state that anyone explicitly ordered the police officers to arrest Plaintiff. *See* Dkt. Nos. 28-2, 26-3. In fact, Plaintiff's only allegation against Police Chief Craig is that

Craig issued Plaintiff's Notice of Discipline. Dkt. No. 28, pg. 11 (Pg. ID 15). The Notice of Discipline lists the departmental charges Defendant decided to bring against Plaintiff. Dkt. No. 28-2, pg. 2 (Pg. ID 310). Defendant issued the Notice on December 8, 2015—eight months after Plaintiff's arrest. Therefore, the issuance of the Notice of Discipline was not a moving force or cause of Plaintiff's arrest. Thus, this Court finds that Plaintiff cannot establish *Monell* liability under element two of the *Monell* test. Additionally, Plaintiff cannot establish *Monell* liability under any other element of the *Monell* test. Plaintiff does not bring forth any facts that allege the existence of an official legal policy, inadequate training/supervision, or a custom/tolerance of federal rights violations. Nor does the record reflect the existence of any of the aforementioned violations. Therefore, this Court concludes that although there is a genuine dispute about whether Plaintiff was falsely arrested, Plaintiff cannot establish that the municipality, Defendant, is liable for the possible violation. Therefore, this Court holds that it will dismiss Counts III and IV of Plaintiff's complaint to the extent that it alleges federal false arrest/imprisonment violations.

    **b. Malicious Prosecution**

The Fourth Amendment authorizes malicious prosecution claims. Malicious prosecution "'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting

*Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). Malicious prosecution is not tantamount to false arrest; it addresses detention associated with "wrongful institution of legal process." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). False arrest, on the other hand, remedies detention caused "by absence of legal process." *Id.* (quoting *Wallace*, 549 U.S. at 390). A federal malicious prosecution claim requires a plaintiff to prove four elements. Plaintiff must show that:

> (1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Sanders v. Jones*, 845 F.3d 721, 728 (6th Cir. 2017) (citing *Skyes*, 625 F.3d at 308–09 (6th Cir. 2010)). In this case, the record does not reflect that Defendant initiated a criminal prosecution against Plaintiff. According to the record, police officers employed by Defendant arrested Plaintiff on April 18, 2015 and brought him into the police station for processing. Dkt. No. 26-3, pgs. 4–5 (Pg. ID 245–46). Defendant released Plaintiff that same day. *Id.* Two days later, officers employed by Defendant reviewed the facts of the case with an Assistant Prosecuting Attorney and decided that it would not present Plaintiff with charges. *Id.* at pg. 11 (Pg. ID 252). Instead, Defendant conducted an internal misconduct investigation; Defendant did not conduct a criminal investigation. *Id.* On December 8, 2015, Defendant charged

Plaintiff with Neglect of Duty in violation of the Detroit Police Department Manuel Series 100. Dkt. No. 28-2, pg. 2 (Pg. ID 310). However, Defendant never initiated criminal charges against Plaintiff.

Plaintiff does not bring evidence to show that Defendant brought criminal charges against him or otherwise initiated criminal prosecution against him. In Plaintiff's deposition, Plaintiff stated that Defendant arrested him for leaving the scene of an injury accident. Dkt. No. 28-1, pg. 12 (Pg. ID 304). Plaintiff further stated that there was a document that he read which was an overall synopsis of the incident; this document stated that his charge was leaving the scene of an injury accident. *Id.* However, Plaintiff did not state that Defendant actually charged him with this crime. *See id.* The record in this case clearly reflects that Defendant did not initiate criminal prosecution against Plaintiff. Therefore, element one of a malicious prosecution claim is not met. Thus, this Court will grant summary judgment in favor of Defendant and dismiss Count V of Plaintiff's complaint to the extent that it alleges a federal malicious prosecution violation.

2. **State Claims**

Count II of Plaintiff's complaint alleges a state law claim of intentional infliction of emotional distress. Dkt. No. 1, pg. 5 (Pg. ID 5). Plaintiff's complaint also presumably alleges state law claims of false arrest/imprisonment, and malicious prosecution. *Id.* at pg. 6 (Pg. ID 6). Pursuant to 28 U.S.C. § 1367, district

courts may exercise supplemental jurisdiction over state law claims. However, "supplemental jurisdiction is discretionary, not mandatory." *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011). A district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of state law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) *the district court has dismissed all claims over which it has original jurisdiction*, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(Emphasis added). 28 U.S.C. § 1367(c); *Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014). Here, this Court has dismissed all of Plaintiff's federal claims. Therefore, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. In conclusion, this Court will dismiss Count II of Plaintiff's complaint and the state law claims in Counts III, IV, and V of Plaintiff's complaint.

### 3. Leave to Amend

In his response to Defendant's Motion, Plaintiff requested this Court grant him leave to amend his complaint to make specific allegations against the individuals involved in his arrest, detention, suspension, and demotion. Dkt. No. 28, pg. 14 (Pg. ID 291). Plaintiff would also like to include a claim for deprivation of his

property interest in his public employment. *Id.* This Court will allow Plaintiff to file a Motion for Leave to Amend Complaint. If Plaintiff chooses to file this Motion, it is due by July 9, 2018. Defendant must respond by July 23, 2018, and Plaintiff must file a reply by July 30th, 2018.

Accordingly, this Court will also adjust the scheduling order in this case. The final pretrial conference will be on October 11, 2018 at 9:00 am, and the trial date will be set for October 23, 2018.

## V. CONCLUSION

For the reasons discussed herein, the will Court grant Defendant's Motion and allow Plaintiff to file a Motion for Leave to Amend Complaint.

SO ORDERED.

Dated: July 2, 2018

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge